UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTY R.,[1] | ) |
|           *Plaintiff*, | ) |
| vs. | ) No. 1:23-cv-01278-JMS-TAB |
| MARTIN J. O'MALLEY, *Commissioner of the Social Security Administration*, | ) |
|           *Defendant*. | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Christy R. filed for supplemental security income from the Social Security Administration ("SSA") on February 8, 2021, alleging a disability onset date of October 5, 2020. [Filing No. 9-5 at 2.] Her application was denied initially and upon reconsideration, and a hearing was held before Administrative Law Judge Lauren Burstein ("the ALJ"). [Filing No. 9-2 at 18-29.] On September 30, 2022, the ALJ issued a decision concluding that Christy R. was not entitled to benefits, and the Appeals Council denied review. [Filing No. 9-2 at 2; Filing No. 9-2 at 18-29.] Christy R. then filed this lawsuit on July 24, 2023, asking this Court to review the denial of benefits. [Filing No. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

# I.
## STANDARD OF REVIEW

"The Social Security Administration provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." *Hess v. O'Malley*, 92 F.4th 671, 677 (7th Cir. 2024) (quoting 42 U.S.C. § 423(d)).

When an applicant appeals an adverse benefits decision, the Court "will reverse an ALJ's decision only if it is the result of an error of law or if it is unsupported by substantial evidence." *Martin v. Kijakazi*, 88 F.4th 726, 729 (7th Cir. 2023) (citing *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). Substantial evidence is "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citation omitted). Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). "But even under this deferential standard of review, an ALJ 'must provide a logical bridge between the evidence and [the] conclusions.'" *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Hess*, 92 F.4th at 677 (citations omitted); 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4). The ALJ must evaluate the following, in sequence:

(1) whether the claimant is currently [un]employed;

(2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner];

(4) whether the claimant can perform [her] past work; and

(5) whether the claimant is capable of performing work in the national economy.

*Hess*, 92 F.4th at 677 (quoting *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001)). A claimant is disabled if she satisfies Steps One, Two, and Three. *Gedatus*, 994 F.3d at 898. If a claimant satisfies Steps One and Two, but not Step Three, the claimant must then satisfy Step Four to be found disabled. *See id.* "The burden of proof is on the plaintiff at steps one through four, but the burden shifts to the Commissioner at step five." *Wilder v. Kijakazi*, 22 F.4th 644, 651 (7th Cir. 2022). "[I]f the ALJ can make a conclusive finding at any step that the claimant either is or is not disabled, then she need not progress to the next step." *Hess*, 92 F.4th at 677-78 (quotations and citation omitted).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC"), which is an assessment of "the most an individual can work despite his or her limitations or restrictions." *Jarnutowski*, 48 F.4th at 773 (citation omitted). An ALJ must consider seven strength functions when assessing a claimant's RFC to work: "lifting, carrying, sitting, standing, walking, pushing, and pulling." *Id.* at 773-74 (citing SSR 96-8p, 61 Fed. Reg. 34474, 34475 (July 2, 1996)). An ALJ must also describe "how the evidence supports each conclusion [on strength functions], citing specific medical facts (e.g., laboratory findings)

3

and nonmedical evidence (e.g., daily activities, observations)." *Jarnutowski*, 48 F.4th at 773 (quoting SSR 96-8p, 61 Fed. Reg. at 34478). "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe and may not dismiss a line of evidence contrary to the ruling." *Id.* at 774 (quotations and citation omitted). "Essentially, an ALJ's RFC analysis 'must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations.'" *Id.* (quoting *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021)). The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.920(a)(4)(iv), (v).

If the ALJ's decision "uses the correct legal standards, is supported by substantial evidence, and builds an accurate and logical bridge from the evidence to the ALJ's conclusions," the Court must affirm the denial of benefits. *Hess*, 92 F.4th at 677 (quotations and citation omitted); *Chavez v. O'Malley*, --- F.4th ---, 2024 WL 1228980, at *3 (7th Cir. Mar. 22, 2024). But if the ALJ's decision "is based on incorrect legal standards or unsupported by substantive evidence," the Court will remand for further consideration. *Baptist v. Kijakazi*, 74 F.4th 437, 441 (7th Cir. 2023) (citations omitted).

## II.
### BACKGROUND[2]

Christy R. was 42 years old on her alleged onset date. [*See* Filing No. 9-5 at 2.] The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 416.920(a)(4) and

---

[2] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

4

concluded that Christy R. was not disabled. [Filing No. 9-2 at 19.] Specifically, the ALJ found as follows:

- At Step One, Christy R. has not engaged in substantial gainful activity[3] since January 11, 2021, the application date. [Filing No. 9-2 at 20.]

- At Step Two, Christy R. had the following severe impairments: fibromyalgia; cervical radiculopathy; lumbago with sciatica; sacroiliitis; migraines; obesity; and bipolar disorder. [Filing No. 9-2 at 20.]

- At Step Three, Christy R.'s impairments (or combination of impairments) did not meet or medically equal the severity of one of the listed impairments. (20 C.F.R. § 404.1520(d), 404.1525, and 404.1526). [Filing No. 9-2 at 20.]

- After Step Three but before Step Four, Christy R. had the RFC "to perform sedentary work as defined in 20 CFR 416.967(a) except [she] can climb ramps and stairs occasionally; can never climb ladders, ropes, or scaffolds; can stoop, kneel, crouch, and crawl occasionally; should avoid unprotected heights, operating motor vehicles, and work around moving mechanical parts; should avoid frequent exposure to bright or flashing lights, and strong chemical odors; can concentrate, persist, and maintain pace while doing simple, routine tasks; cannot perform tandem tasks; and can occasionally interact with coworkers and public." [Filing No. 9-2 at 22.]

- At Step Four, Christy R. is unable to perform any past relevant work. [Filing No. 9-2 at 27.]

- At Step Five, relying on the testimony of the vocational expert and considering Christy R.'s age, education, work experience, and RFC, there are jobs that exist in sufficient numbers in the national economy that she can perform, such as eye glass assembler, circuit board tester, and costume jewelry maker. [Filing No. 9-2 at 28-29.]

### III.
#### DISCUSSION

Christy R. argues that: (1) the ALJ ignored evidence of her migraines and impermissibly disregarded the possibility of her migraines equaling Listing 11.02; and (2) the ALJ erred in her

---

[3] Substantial gainful activity is defined as work activity that is both substantial (i.e., involves significant physical or mental activities) and gainful (i.e., work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

5

consideration of Christy R.'s own description of her symptoms under Social Security Regulation ("SSR") 16-3p. [Filing No. 11 at 17-24; Filing No. 11 at 25-27.] The Court addresses each issue in turn.

### A. The ALJ's Listing Analysis Concerning Migraines

Christy R. argues that "[d]espite finding that migraines are a severe impairment, there is no indication that" the ALJ ever considered Listing 11.02 at Step Three. [Filing No. 11 at 17.] She asserts that Listing 11.02 is "the most closely related listing section used in consideration of migraines" and that the ALJ ignored it entirely and failed to hear evidence from a medical expert on the issue. [Filing No. 11 at 4; Filing No. 11 at 17.] In addition to other ailments, Christy R. notes that she "has been treated for migraines precipitated by neck pain and associated with light and noise sensitivity for years prior to her current application date" and that "[s]ometimes her migraines last four days, sometimes six days." [Filing No. 11 at 20-21.] Christy R. argues that the ALJ's failure to consider Listing 11.02 is inconsistent with the ALJ's duty to "provide sufficient analysis for the Listing that corresponds to each of a claimant's severe impairments." [Filing No. 11 at 17-24.]

The Commissioner responds that the ALJ's finding that Christy R.'s impairments did not equal the Listings is supported by substantial evidence. [Filing No. 13 at 4.] The Commissioner notes that a state-agency physician "reviewed the record and did not conclude that [Christy R.'s] impairments medically equaled a listed impairment" and that another doctor opined that she had certain limitations but "did not conclude that the impairments medically equaled a listed impairment." [Filing No. 13 at 6-7.] Thus, he argues, "it would not have been possible for the ALJ to find that [Christy R.'s] migraines equaled a Listing" based on the record evidence and Christy R. has not cited to any evidence warranting such a finding. [Filing No. 13 at 7.] The

Commissioner also asserts that "the applicable regulations and agency guidance" does "not require[] [the ALJ] to obtain the opinion of a medical expert prior" to the Step Three finding. [Filing No. 13 at 8.]

Christy R. replies that the Commissioner "provides nothing more than post hoc rationalizations to defend the ALJ's failure to discuss the listing at step three." [Filing No. 14 at 1.] Christy R. argues that "[t]he Court's review is limited to the reason[s] articulated in the ALJ's decision, and post-hoc rationalization submitted by the Commissioner [is] impermissible." [Filing No. 14 at 1-2.] Christy R. asserts that, despite the Commissioner's arguments, "[t]he fact remains that the ALJ found migraines to be a severe impairment at step two, and at step three she failed to consider listing 11.02 under the guidance of SSR 19-4p." [Filing No. 14 at 2.]

The statute, regulations, and caselaw are all in agreement: once the ALJ deems a claimant's impairment as severe under Step Two, the ALJ "should mention the specific listings [she] is considering [at Step Three] and [her] failure to do so, if combined with a 'perfunctory analysis,' may require a remand." *Ribaudo v. Barnhart*, 458 F.3d 580, 583-84 (7th Cir. 2006) (finding remand warranted where ALJ found a severe impairment but did not discuss an applicable listing section in relation to the severe impairment and failed to consider evidence favorable to the claimant under the applicable listing section); *Scott v. Barnhart*, 297 F.3d 589, 595-96 (7th Cir. 2002) (finding remand warranted where ALJ found a severe impairment but "did not discuss or even reference" an applicable listing section that was critical to plaintiff's case); *see also Minnick v. Colvin*, 775 F.3d 929, 935-36 (7th Cir. 2015) (finding remand warranted where ALJ found a severe impairment and provided a perfunctory two-sentence analysis as to why the plaintiff's impairment did not meet or equal an applicable listing).

While migraine headaches are not explicitly covered by any Listing, the SSA routinely considers migraine headaches under the criteria for Listing 11.02, the listing for epilepsy, because it is deemed the "most closely analogous listed impairment." SSR 19-4p, 84 Fed. Reg. 44667, 446671 (Aug. 26, 2019), 2019 WL 3996816; *Michelle L.M. v. Kijakazi*, 2023 WL 3835583, at *4 (S.D. Ind. June 6, 2023); *Cooper v. Berryhill*, 244 F. Supp. 3d 824, 828-29 (S.D. Ind. 2017).[4]  A claimant demonstrates equivalence to Listing 11.02 by showing that her migraines cause "functional impairments equivalent to those described in the Listing." *Cooper*, 244 F. Supp. 3d at 829.  The SSA also provides guidance in SSR 19-4p on considering medical equivalence of migraine headaches to Listing 11.02.  SSR 19-4p, 84 Fed. Reg. at 44670-71.

The record shows that Christy R. regularly experienced debilitating migraine headaches over the course of several years triggered by perfume smells, noise, lights, stress, foods, sleep, anxiety, watching TV or staring at her cell phone, and reading.  [Filing No. 9-2 at 46; Filing No. 9-7 at 5; Filing No. 9-7 at 20-28.]  Her migraines are documented as "progressively worsening" over time; occurring 4-5 times per month; accompanied by an aura; lasting for up to a week; and often causing nausea, vomiting, dizziness, loss of memory, and other mental disturbances.  [Filing No. 9-7 at 20; Filing No. 9-7 at 125-29, Filing No. 9-7 at 160.]  Despite the use of prescribed medication, Christy R.'s migraines continued, and she sometimes throws up and is "down for seven days" at a time.  [Filing No. 9-2 at 46; Filing No. 9-7 at 125; Filing No. 9-7 at 160.]  Christy R. listed her migraines as a separate condition for evaluation on her application for benefits and filled

---

[4] The Court notes that effective September 29, 2016, the SSA revised its criteria for evaluating neurological disorders and replaced the previous epilepsy listing that was used to evaluate migraines (Listing 11.03) with Listing 11.02.  See Revised Medical Criteria for Evaluating Neurological Disorders, 81 Fed. Reg. 43048-01 (July 1, 2016), 2016 WL 3551949.  Thus, some prior cases cite Listing 11.03 instead of Listing 11.02.  See *Cooper v. Berryhill*, 244 F. Supp. 3d 824, 828-29 (S.D. Ind. 2017).

out a headache questionnaire, [Filing No. 9-6 at 3; Filing No. 9-6 at 41-46], and doctors who evaluated Christy R. diagnosed her with either headaches or migraines. [Filing No. 9-7 at 125; Filing No. 9-7 at 160].

Nevertheless, the ALJ did not discuss or even reference Listing 11.02 or indicate that he considered SSR 19-4p after he found migraines to be a severe impairment. [*See* Filing No. 9-2 at 20-22.] The Commissioner does not challenge Christy R.'s assertion that the ALJ failed to consider her migraines under Listing 11.02 as part of her sequential analysis, but rather downplays the severity of Christy R.'s migraines and argues that "[b]ased on the record before the ALJ, it would not have been possible for the ALJ to find that plaintiff's migraines equaled a Listing." [Filing No. 13 at 6-7.] The Commissioner maintains that, because a state-agency physician and consultative examiner did not equate Christy R's migraines to a listed impairment, the ALJ did not have a duty to analyze Christy R.'s migraines under a listing. [Filing No. 13 at 6-7.] The Court disagrees.

The Step Three determination of whether a listing is met or equaled is ultimately a question that the ALJ must answer, but SSA regulations require an ALJ to consider the opinion of an expert in making this equivalency determination. *Cooper*, 244 F. Supp. 3d at 829; *Barnett*, 381 F.3d at 670 ("[w]hether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue"); 20 C.F.R. § 404.1526. Therefore, "at minimum, an ALJ must consider a medical consultant's assessment of the record evidence. Thus, it is correct that an ALJ's consideration of the disability determination and transmittal may satisfy the medical equivalence opinion requirement." *Cooper*, 244 F. Supp. 3d at 829-30. But that is not the case here given the lack of analysis regarding Christy R.'s migraines.

9

In this case, no disability determination or other medical report contains any listing equivalence analysis into Christy R.'s migraines. [Filing No. 9-3 at 41-46; Filing No. 9-7 at 32-56; Filing No. 9-7 at 125-34; Filing No. 9-7 at 154-64; Filing No. 9-7 at 215-244.] For example, the state-agency physician's report relied on by the Commissioner analyzes Christy R.'s various other ailments under Listings:

- "1.15 Disorders of the Skeletal Spine Resulting in Compromise of a Nerve Root(s)";
- "12.04 Depressive, Bipolar and Related Disorders";
- "12.08 Personality and Impulse-Control Disorders"; and
- "12.15 Trauma and Stressor Related Disorders."

[Filing No. 9-3 at 45; *see also* Filing No. 9-3 at 38.] The state-agency physician concludes that there is insufficient evidence to meet each listing yet fails to analyze or even reference Christy R.'s migraines under Listing 11.02, let alone state that there is insufficient evidence to meet the 11.02 Listing. [Filing No. 13 at 6; Filing No. 9-3 at 45; *see also* Filing No. 9-3 at 38.] The lack of analysis and indication that Listing 11.02 was considered is alarming considering Christy R.'s own doctors credited her description of migraine symptoms and treated her for those symptoms. [*See* Filing No. 9-7 at 5-6; Filing No. 9-7 at 18-21; Filing No. 9-7 at 25-28.] "As the Seventh Circuit pointed out . . . an ALJ may and 'should contact the doctor [providing a report] for clarification if necessary.'" *Cooper*, 244 F. Supp. 3d at 830 (quoting *Barnett*, 381 F.3d at 669). Since the ALJ did not discuss Christy R.'s migraines in relation to any medical assessment, remand is appropriate to avoid "perfunctory analysis" and "allow the ALJ to completely and straightforwardly address this issue." *See Ribaudo*, 458 F.3d at 583; *Cooper*, 244 F. Supp. 3d at 829-30 (finding remand appropriate where ALJ failed to equate claimant's migraines with Listing 11.02 while relying on physician reports which ignored claimant's migraines); *Michelle*, 2023 WL 3835583, at *6 (same).

It remains true that the Court applies "a very deferential standard of review" to ALJ decisions, making sure not "to displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (internal citations omitted). However, it is also true that ALJs must build "an accurate and logical bridge between the evidence and the conclusion." *Jarnutowski* 48 F.4th at 774 (internal citations omitted). In other words, while an ALJ's determination should not be frequently disturbed, an ALJ must show their work by clearly outlining the reasoning which supports a determination. In this case, the ALJ's failure to analyze Christy R.'s migraines within the framework of a listed impairment introduces a gap along the logical bridge between the evidence and the conclusion that must be remedied on remand.

### B. Christy R.'s Subjective Symptoms

Christy R. also argues that the ALJ did not properly assess her subjective symptoms as required under SSR 16-3p. [Filing No. 11 at 4.] The Court need not resolve this issue because it finds that the issue discussed above is dispositive. Nevertheless, on remand, the ALJ should take care to follow the appropriate standard for subjective symptom evaluation. *See Gedatus*, 994 F.3d 893, 900 ("[T]he ALJ must set forth specific reasons for discounting subjective reports of symptoms.") (quotations and citation omitted); *Christina B. v. Kijakazi*, 2022 WL 178606, at *8 (Jan. 20, 2022) ("The ALJ's reliance on objective medical imaging and neurological testing [to discount the claimant's subjective symptoms] is misplaced in this case, largely because her own treating physicians accepted her symptom allegations and treated her for those same symptoms. Thus, the ALJ's conclusion regarding the importance of normal objective medical evidence is not supported by the record.").

## IV.
### Conclusion

Where the ALJ should have constructed a logical bridge, the Court's review has revealed a gap, that requires reversal. On remand, the ALJ must properly evaluate the listings and consider all evidence, including evidence related to migraines and evidence regarding Christy R.'s subjective symptoms. The decision by the Commissioner is **VACATED** and **REMANDED** for a new determination consistent with this opinion. Final judgment shall enter accordingly.

Date: 4/4/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**